***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and *Page 2 
Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer regularly employing three or more employees at all times pertinent hereto and the Industrial Commission has subject matter jurisdiction over the parties.
2. The Pre-Trial Agreement was accepted and made a part of the official record in this case.
3. The carrier on the risk is AIG Claim Services, Inc.
4. The parties stipulated to the following documentary evidence: Stipulated Exhibit Number 1 is plaintiff's Medical Records, Stipulated Exhibit Number 2 is the Industrial Commission Forms, Stipulated Exhibit Number 3 is a workers' compensation claim acknowledgment form dated August 3, 2005, Stipulated Exhibit Number 4 is a workers' compensation claim acknowledgment form dated November 18, 2005.
5. The parties stipulated at the hearing that the plaintiff no longer works for defendant-employer and has not been employed since July 12, 2006.
6. That the date of the alleged occupational disease was August 1, 2005.
 7. The average weekly wage is $644.96 yielding a comp rate of $429.99. *Page 3 
8. The deposition of Dr. Eric T. Emerson was taken and has been received into the record.
 *********** ISSUES
The issues for determination are:
 I. Whether plaintiff has a compensable occupational disease to her right hand, wrist and thumb.
 II. Whether plaintiff provided timely notice to defendants under N.C. Gen Stat. § 97-22.
 III. Whether plaintiff's claim is barred by N.C. Gen. Stat. § 97-58.
 ***********
Based upon all of the competent evidence adduced from the record, and the reasonable inferences drawn therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff's date of birth is June 7, 1948. Plaintiff has a GED and has a CNA certification. Plaintiff has worked in various capacities as a CNA in nursing homes and for home health care providers. Plaintiff became employed for the defendant-employer on July 20, 1992 as a home health care nurse.
2. As a home health care nurse, plaintiff went to patient's houses. Plaintiff assisted between five and fifteen patients a day. Many of these patients were recovering from surgery, infirm, or elderly. Plaintiff assisted the patient with taking a bath, changing their bedding and their clothes. Plaintiff would wash their hair and nails and take care of other personal needs such as combing hair, brushing teeth, buttoning their clothes, pulling on hoses, including compression *Page 4 
stockings, helping them get in and out of the bed and getting in and out of bathtubs. When bathing the patients, plaintiff would use two washcloths, one for washing and one for rinsing and she would continuously wring out both washcloths after using them. Plaintiff would wring out a washcloth approximately 50 times with each patient. Plaintiff would wring the washcloth with both hands in a twisting, squeezing motion and would dry them off with a towel. Plaintiff also used a draw sheet that she would pull with both arms and with much force to help patient shift in bed or to get out of bed. Plaintiff began experiencing pain with her right hand and thumb when she would wring out the washcloths. Plaintiff began noticing this pain sometime during the summer months of the year 2004. Plaintiff sought medical treatment as of August 30, 2004 at the Southeast Hand Center.
3. Plaintiff first injured her back on January 29, 2004 when she got out of her car in a patient's driveway and slipped on ice. This claim was accepted as a compensable workers' compensation claim by the defendant-employer. Plaintiff has been out of work due to this work injury since July 28, 2005 and has undergone two surgeries and continues to receive temporary total disability benefits for this compensable claim.
4. Plaintiff first gave written notice to defendants concerning her hand claims on August 2, 2005 and again on November 17, 2005. There is no evidence that defendant-employer attempted to investigate these claims after receiving written notice or ever attempted to send plaintiff to a physician.
5. Plaintiff was seen on August 30, 2004 by Dr. Caulfield at the Southeast Hand Center. He diagnosed plaintiff as having deQuervain's tenosynovitis, which is inflammation of the tendons of the thumbs. Dr. Caulfield stated that deQuervain's tenosynovitis is a type of *Page 5 
synovitis. Dr. Caulfield recommended steroid injection. Dr. Caulfield saw her back on September 15, 2004 where it was found that plaintiff was improved after the injection.
6. Plaintiff returned to Southeast Hand Center on September 19, 2005 with complaints of pain in the base of the right thumb. Plaintiff was sent by Dr. Emerson on that day. Dr. Emerson diagnosed plaintiff as having deQuervain's tenosynovitis and osteoarthritis. Dr. Emerson's treatment recommendations for these conditions include injections, splinting and surgery and arthroplasty or joint replacement surgery.
7. It is Dr. Emerson's opinion that plaintiff's job as a home healthcare nurse where she was required to wash three to six patients and wring washcloths approximately 50 times for each patient more likely than not have caused her tenosynovitis to develop. Dr. Emerson explained that when you wring out washcloths with the pinching and twisting and gripping motion that you are putting maximum tension across the thumb and ligaments, which can ultimately lead to deQuervain's tenosynovitis. Dr. Emerson also stated that in his opinion, based on the same job description, that it exposed her to a higher risk of contracting deQuervain's tenosynovitis than the public not so employed. It is Dr. Emerson's opinion that claimant's job as a home healthcare nurse for the defendant-employer significantly aggravated the development of osteoarthritis in her right thumb. Dr. Emerson stated that the type of activities that she described performing in her job as a home health care nurse would "definitely" be the type of activities that cause an aggravation of an underlying arthritic condition in a person's thumb and hand.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following: *Page 6 
 CONCLUSIONS OF LAW
1. Plaintiff has contracted a compensable occupational disease, deQuervain's tenosynovitis, which is a type of synovitis, a listed disease. N.C. Gen. Stat. § 97-53 (20)(21).
2. Plaintiff's osteoarthritis, a pre-existing condition in her right thumb, was significantly aggravated by her employment with the defendant-employer. N.C. Gen. Stat. § 97-53.
3. Plaintiff provided adequate written notice of her occupational disease at least as of November 17, 2005. There is no evidence that defendants attempted to investigate plaintiff's claim at that time and there is no evidence that defendants were prejudiced by not receiving notice of her claim prior to November 17, 2005. N.C. Gen. Stat. § 97-22.
4. There is no evidence that plaintiff was informed that her condition was causally related to her employment by a physician until at least October 15, 2006. Wherefore, plaintiff's filing of a written notice of her claim on pursuant to Form 18 on October 16, 2006 was within the required time limits set forth in N.C. Gen. Stat. § 97-58.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to all medical treatment related to deQuervain's tenosynovitis and the osteoarthritis in her right hand and thumb.
2. No temporary total disability benefits are awarded at this time due to the fact that plaintiff is already completely disabled as a result of a compensable back claim and is currently receiving temporary total disability benefits. *Page 7 
3. If plaintiff's treating physician assigns a disability rating, plaintiff would be entitled to receive compensation for the same. N.C. Gen. Stat. § 97-31.
4. Defendants shall pay all medical expenses incurred or to be incurred that are related to plaintiff's compensable occupational disease so long as such treatment may reasonably be required to effect a cure, give relief and will lessen plaintiff's disability.
5. Defendants shall pay all costs, which include an expert witness fee of $510.00 to Dr. Eric T. Emerson.
6. Plaintiff's counsel is entitled to receive twenty-five percent (25%) attorney's fees on any temporary total disability benefits or permanent partial disability benefits awarded to plaintiff in the future.
7. Plaintiff's counsel is entitled to receive an attorney's fee for defending this appeal paid by the defendants as part of the bill of costs. Plaintiff's counsel shall submit an affidavit concerning his hourly wage and the amount of time spent defending this appeal. Upon receipt, the Commission shall determine the appropriate amount of attorney's fees to be paid to plaintiff's counsel by the defendants. N.C. Gen. Stat. § 97-88. *Page 8 
This the 16th day of September 2008.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1